UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEVE SELL,                          )
                                     )
            Plaintiff,               )
                                     )        CIVIL ACTION NO.
VS.                                  )
                                     )        3:10-CV-2553-G
GERALD PETERS GALLERY, INC.,         )
ET AL.,                              )
                                     )
            Defendants.              )

MEMORANDUM OPINION AND ORDER

Before the court are the motions of the defendants Addison Rowe Fine Art,

LLC ("Addison Rowe") and American Illustrators Gallery, Inc. ("AIG") to dismiss for

lack of personal jurisdiction.  For the following reasons, the motions are denied.

I.  BACKGROUND

Plaintiff Steve Sell ("Sell") is a citizen and resident of Texas.  Plaintiff's Second

Amended Complaint ("Complaint") ¶ 1.01.

Addison Rowe is a New Mexico limited liability company with its principal

place of business in Santa Fe, New Mexico.  *Id*. ¶ 1.05.

AIG is a Pennsylvania corporation with its principal place of business in New York City, New York. *Id*. ¶ 1.04.

In March 2008, Sell purchased a painting by artist N.C. Wyeth titled "The Sheriff" from defendants Gerald Peters Gallery, Inc. ("GPG-NM") and AIG for $1,500,000. *Id*. ¶ 3.01. Sell purchased the painting as an investment partially based on misrepresentations made by defendant Peters Gallery of New York, Inc. ("GPG-NY") and its commonly owned and controlled affiliate and agent, Peter's Fine Art Ltd. ("GPG-TX," and together with GPG-NY and GPG-NM, "the Gerald Peters Entities"). *Id*.

On or about December 27, 2007, GPG-NM obtained a 50% ownership interest in "The Sheriff" from AIG, in exchange for transferring to AIG a 50% interest in another N.C. Wyeth painting titled "Plains Indian Signaling Peace." *Id*. ¶ 3.03. Thus, at the time of the sale of "The Sheriff" to Sell, the painting was equally owned by AIG and GPG-NM. *Id*. AIG placed "The Sheriff" in the possession of the Gerald Peters Entities for sale, and thus Sell alleges that the Gerald Peters Entities acted as agents for AIG in connection with the sale of "The Sheriff." *Id*.

Sell maintains that each of the Gerald Peters Entities misrepresented that "The Sheriff" had appeared on the front cover of the August 1, 1908 issue of *The Saturday Evening Post* and had been used to illustrate two different stories in two different publications. *Id*. ¶ 3.01. In fact, according to Sell, the painting had not appeared on

any cover of *The Saturday Evening Post*, had only appeared in *Scribners*, and was not used to illustrate any story. *Id*. These misrepresentations were allegedly ratified by GPG-NM and AIG, the owners of "The Sheriff" at the time Sell's purchase of the painting. *Id*.

Prior to agreeing to purchase the painting, Sell sought a neutral third party to conduct a second appraisal. *Id*. ¶ 3.10. Sell relied on Ashley Tatum Casson, an employee of GPG-TX, to arrange the third party appraisal. *Id*. Thereafter, Casson informed Sell that she had contacted Victoria Addison with Addison Rowe. *Id*. Based on Casson's recommendation, Sell contracted with Addison Rowe to conduct an independent appraisal of the painting. *Id*. In that appraisal, Victoria Addison and Addison Rowe repeated the alleged misrepresentations. *Id*. ¶ 3.12. Addison Rowe purportedly failed to discover these were false representations and based its overstated appraisal on them. *Id*.

On December 14, 2010, Sell filed the instant case. Against AIG, he asserts claims for breach of contract, fraud, and rescission/restitution, and against Addison Rowe, Sell asserts claims of negligent misrepresentation, negligence, and breach of

contract.  *See generally* Complaint.[*]  Addison Rowe and AIG now move to dismiss

Sell's claims against them for lack of personal jurisdiction.

## II.  ANALYSIS

### A.  The Factual Standard:  A *Prima Facie* Case

When a nonresident defendant moves to dismiss for lack of personal

jurisdiction, the plaintiff bears the burden of establishing the district court's

jurisdiction over the nonresident.  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert.*

*denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592

(5th Cir. 1999).  If the district court chooses to decide the matter without an

evidentiary hearing, the plaintiff may meet his burden by presenting a *prima facie* case

for personal jurisdiction.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they

are controverted by opposing affidavits, and all conflicts in the facts are resolved in

favor of the plaintiff.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.  In making

its determination, the court may consider affidavits, interrogatories, depositions, oral

testimony, or any combination of recognized discovery methods.  *Allred v. Moore* &

---

[*]        As to all of the defendants, Sell brings the following claims – breach of
contract against GPG-NM, AIG, and Addison Rowe; fraud against GPG-NM, GPG-
NY, and AIG; negligent misrepresentation against GPG-NY and Addison Rowe;
rescission/restitution against GPG-NM and AIG; civil conspiracy against GPG-NM
and GPG-NY; and negligence against Addison Rowe.  *See generally* Complaint.

*Peterson*, 117 F.3d 278, 281(5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998);

*Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

B.  <u>The Legal Standard</u>

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum.  *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984).  Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction.  *Id.*  Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia*, S.A., 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*, 20 F.3d at 647 n.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq.* (Vernon 1997) (Texas long-arm statute).

- 5 -

## C. Due Process Requirements

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a nonresident defendant:  (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state.  *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990).  The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign."  *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement.  *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84,

- 6 -

93-94 (1978); *Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987). General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established

'minimum contacts' in the forum [s]tate."  *Burger King*, 471 U.S. at 474 (quoting

*International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)).  The

"purposeful availment" requirement of the minimum contacts inquiry "ensures that a

defendant will not be haled into a jurisdiction solely as a result of 'random,'

'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party

or a third person.'"  *Id.* at 475 (citations omitted).  A plaintiff must establish a

substantial connection between the nonresident defendant and the forum state.  *Jones*

*v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert.*

*denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374

(5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life*

*Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment

inquiry:  "no single factor, particularly the number of contacts, is determinative."

*Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  "[W]hether the minimum

contacts are sufficient to justify subjection of the non-resident to suit in the forum is

determined not on a mechanical and quantitative test, but rather under the particular

facts upon the quality and nature of the activity with relation to the forum state."

*Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982);

see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert.*

*denied*, 510 U.S. 1195 (1994).

D.  Discussion

1.  *Minimum Contacts*

a.  AIG

Sell maintains that GPG-TX acted as AIG's agent with respect to the sale of "The Sheriff" to him.  Plaintiff's Consolidated Response to Motions to Dismiss for Lack of Personal Jurisdiction ("Response") (docket entry 52) at 4.  Thus, Sell argues, GPG-TX's acts in Texas are imputed to AIG for the establishment of personal jurisdiction over AIG.  *Id.* at 4-6.  For example, Sell alleges that AIG held a 50% ownership interest in "The Sheriff" at the time of sale and agreed to pay a commission to the Gerald Peters Entities if they were able to sell the painting, a commission that was later paid upon successful sale of the painting to the plaintiff. *Id.* at 4-5.  Sell further alleges that AIG granted the Gerald Peters Entities possession of "The Sheriff" so that the painting could be marketed and sold and the authority to take the necessary and appropriate steps to accomplish the task.  *Id.* at 5. Additionally, Sell contends, AIG granted GPG-TX authority for the sale of the painting and GPG-NM could not have contracted for the sale of, and AIG's interest in "The Sheriff" could not have been transferred, without AIG's express authority.  *Id.* at 6.

A principal can be subject to a forum's jurisdiction based on the actions of its agent.  See *Akerblom v. Ezra Holdings Ltd.*, No. 4:11-CV-0694, 2012 WL 253376, *15

(S.D. Tex. Jan. 25, 2012) ("'Under Texas law, [a]gency is the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control.'") (citations omitted); *Stripling*, 234 F.3d at 870-872.  As a general proposition, Texas law does not presume agency and, when claiming agency, the alleging party has the burden of proving its existence.  *Buchoz v. Klein*, 184 S.W.2d 271, 286 (Tex. 1944).  A principal is liable for the acts of its agent when "the agent has actual or apparent authority to do those acts or when the principal ratifies those acts."  *Spring Garden 79U, Inc. v. Stewart Title Co.*, 874 S.W.2d 945, 948 (Tex. App.--Houston[1st Dist.] 1994, no writ)(citations omitted).  Actual authority arises when the principal intentionally confers authority upon an agent, or intentionally allows the agent to believe it has authority, or by want of due care allows the agent to believe himself to possess authority.  *Id*.  Apparent authority arises when a principal's conduct would lead a reasonably prudent person to believe that the agent possessed the authority to act on behalf of the principal.  See *Maccabees Mutual Life Insurance Company v. McNeil*, 836 S.W.2d 229, 232-33 (Tex. App.--Dallas 1992, no writ).

The court concludes that the Gerald Peters Entities had the authority to act on behalf of AIG.  By granting possession and authority to sell a painting within one's possession, AIG intentionally conferred authority or at the very least took actions that would lead a reasonably prudent person to believe that the agent possessed

- 10 -

authority.  Consequently, the court concludes that GPG-TX, as well as all of the

Gerald Peters Entities, were acting as agents of AIG.  Accordingly, the contacts and

actions of the Gerald Peters Entities, including GPG-TX, are imputed to AIG for the

determining this court's exercise of personal jurisdiction over AIG.

### b.  Addison Rowe

Sell further alleges that he has established that Addison Rowe has the

minimum contacts necessary for the court to exercise personal jurisdiction over it.

Response at 8.  Specifically, Sell asserts that jurisdiction is proper over Addison Rowe

because he entered into a contract with Addison Rowe, the material relied upon in

formulating the misrepresentation were supplied from Texas, and the results of the

appraisal were sent by Addison Rowe by phone and email to Texas.  *Id*. at 8-9.

There is a significant connection between Addison Rowe and Sell's claim that

permits the exercise of specific jurisdiction in this case.  The sum of this defendant's

contacts with the forum state, when considered both qualitatively and quantitatively,

are sufficient to allow the exercise of specific jurisdiction in Texas.  Addison Rowe's

contacts with Texas, from which this suit arises, are not "random," "fortuitous," or

"attenuated."  See *Burger King*, 471 U.S. at 475.  By entering into a contract with

Sell, a resident of Texas, Addison Rowe was purposefully availing itself of the

privileges and protections of doing business in Texas.  This availment should have

alerted Addison Rowe to the possibility that it might be haled into court in Texas to

answer complaints related to this contractual relationship.  Although the initial

contact with Addison Rowe was brought about by a third party and the contracted

services were performed in New Mexico, the contract formed was between Addison

Rowe and Sell, a Texas resident.  Furthermore, as the results of the appraisal were

sent to Texas, the services provided had a reasonably foreseeable consequence within

the forum state.

### 2.  *Fair Play and Substantial Justice*

To determine whether personal jurisdiction comports with fair play and

substantial justice, the court must examine a number of factors, including:  (1) the

defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in

convenient and effective relief; (4) the interstate judicial system's interest in efficient

resolution of controversies; and (5) the shared interests of the several states in

furthering fundamental substantive social policies.  *Asahi Metal Industry Co., Ltd. v.*

*Superior Court of California*, 480 U.S. 102, 113 (1987).  "[O]nce minimum contacts

are established, a defendant must present 'a compelling case that the presence of

some consideration would render jurisdiction unreasonable.'"  *Enviro Petroleum, Inc. v.*

*Kondur Petroleum*, 79 F.Supp.2d 720, 725 (S.D. Tex. 1999) (quoting *Burger King*, 471

U.S. at 477).  In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not

comport with fair play and substantial justice when the nonresident defendant has

purposefully established minimum contacts with the forum state."  *Id.* (quoting

*Guardian Royal Exchange Assurance, Limited v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

Neither AIG nor Addison Rowe has made a compelling case to establish that specific jurisdiction in this case would not comport with traditional notions of fair play and substantial justice. There would, in all likelihood, be some burden placed on either defendant if it is forced to defend itself in Texas. As the court has already noted, AIG's principal place of business is in Pennsylvania, and Addison Rowe's principal place of business is in New Mexico. These burdens, however, are outweighed by the interest of Texas in adjudicating this matter. Sell is a resident of Texas, so Texas has an interest in ensuring that its residents can seek relief here. This, combined with Sell's interest in receiving convenient and effective relief, outweighs any burden that either AIG or Addison Rowe might face.

Because any burden placed on Addison Rowe or AIG in this case is outweighed by the state's interest in the matter and by the plaintiff's interest in receiving convenient and effective relief, the exercise of specific jurisdiction in this case comports with traditional notions of fair play and substantial justice. The court, therefore, concludes that the exercise of specific jurisdiction is appropriate in this case.

III.  <u>CONCLUSION</u>

For the reasons set forth above, the motions to dismiss for lack for personal

jurisdiction are **DENIED**.

**SO ORDERED**.


July 9, 2012.


                                            _____

                                            A. JOE FISH
                                            **Senior United States District Judge**